JUDGE KOELTL

# UNITED STATES DISTRICT COURT
for the

BEYOND BOOKING, INC.

*Plaintiff*

v.

THE VAULT, LLC d/b/a THE BUNKER CLUB
and B.R. GUEST HOLDINGS, LLC

*Defendant*

Civil Action No. 11 CIV 2223

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* The Vault, LLC d/b/a The Bunker Club
206 Spring Street, New York, New York 10012

B.R. Guest Holdings, LLC
206 Spring Street, New York, New York 10012

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: GARVEY SCHUBERT BARER
Attn: Malcolm Seymour III, Esq.
100 Wall Street, 20th Floor
New York, New York 10005
(212) 965-4533

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

CLERK OF COURT

Date: MAR 31 2011

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEYOND BOOKING, INC.,

                    Plaintiff,

-against-

THE VAULT, LLC d/b/a THE BUNKER CLUB, and B.R. GUEST HOLDINGS, LLC,

                    Defendants.

Docket No. 11 CV 2223

COMPLAINT

JUDGE KOELTL

Plaintiff, by its attorneys Garvey Schubert Barer, hereby complains of the Defendants and alleges:

## JURISDICTION AND VENUE

1) Jurisdiction of this Court over Plaintiff's claims is predicated on the Lanham Act, 15 U.S.C § 1125(a) and 28 U.S.C. § 1331. Jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. § 1367.

2) Venue is proper in this District because conduct giving rise to the claims occurred in this District, and Defendants have their principal places of business in this District.

## PARTIES

3) At all times hereinafter mentioned, Plaintiff Beyond Booking, Inc. ("Beyond") was, and is, a not-for-profit corporation organized under the laws of the State of New York, that organizes, produces and promotes regular arts and music events in New York City, primarily in the boroughs of Manhattan and Brooklyn.

4) Upon information and belief, The Vault, LLC ("The Vault") at all times relevant hereto was, and is, a limited liability company organized under the laws of the State of New York on November 20, 2009. Upon information and belief, The Vault was organized for the sole

1

purpose of operating a bar and nightclub in the Meatpacking District of Manhattan under the name "The Bunker Club." Upon information and belief, The Vault registered "The Bunker Club" as an assumed name on August 19, 2010.

5) Upon information and belief, The Vault is a wholly or party owned subsidiary of B.R. Guest Holdings, LLC ("B.R. Guest"), a limited liability company organized under the laws of the State of Delaware and authorized to do business in the State of New York.

6) Upon information and belief, The Vault and B.R. Guest share a principal place of business at 206 Spring Street in the City, County and State of New York.

## FACTS

7) Beyond is the owner of State of New York Service Mark Registration No. S21655 for the mark "The Bunker." Beyond has continuously used "The Bunker" mark in local and interstate commerce since January, 2003 to identify a series of dance music events that Beyond organizes, produces and promotes, and has developed considerable goodwill in association with The Bunker mark. The Bunker, as a mark used to identify a series of dance music events, is arbitrary and inherently distinctive.

8) Beyond has staged events under The Bunker name at renowned venues in New York, such as Lincoln Center, and in cities across the world, such as San Francisco, Philadelphia, Chicago, Detroit, Washington, D.C., Denver, Berlin and Krakow. In connection with these events, Beyond has used The Bunker mark on marketing and promotional materials circulated in interstate and international commerce. The Bunker's events have garnered a respectable reputation and have been profiled in periodicals with local and interstate circulation such as The New York Times, The Wall Street Journal, Time Out New York, New York Magazine and the Village Voice.

9) Upon information and belief, The Bunker Club began limited operations in or around September, 2010, and formally opened its doors for business in November, 2010. The Bunker Club presents itself as a bar and dance club, and regularly hosts dance music events similar to those offered by The Bunker. Upon information and belief, The Bunker Club is a suggestive mark, alluding to the venue's location in an underground vault in the Meatpacking District of Manhattan.

10) Upon information and belief, representatives of B.R. Guest assisted The Vault in selecting "The Bunker Club" as a name for the venue and have assisted The Vault in marketing and promoting The Bunker Club. In interviews provided to news media, representatives of B.R. Guest have stated that they deliberated at length in selecting the name. Upon information and belief, Defendants decided to adopt the name in or around May, 2010 and did not begin using the mark in commerce until September, 2010.

11) Beyond is the senior user of The Bunker mark, having used that mark in commerce since January, 2003.

12) At all times relevant herein, a routine search through publicly available information on the Internet would have revealed that Beyond has continuously used The Bunker mark in local and interstate commerce, primarily in New York City, to identify a series of dance music events. Upon information and belief, Defendants knew or should have known that their use of The Bunker Club mark infringed upon Beyond's established rights in The Bunker mark.

13) Defendants' use of The Bunker Club mark to identify a Manhattan night club that regularly hosts similar dance music events is likely to cause confusion, to cause mistake, and to deceive prospective purchasers as to the affiliation, connection or association of The Bunker

Club with The Bunker, and as to the origin, sponsorship or approval of Defendants' services by The Bunker. Specifically:

a) The Bunker, as a mark used to identify a series of dance music events, is arbitrary and inherently distinctive. Because this mark bears no relation to the nature of the services that it identifies, Defendants' use of a similar mark to identify similar services is all the more likely to cause confusion;

b) Defendants' infringing mark, The Bunker Club, is virtually identical to The Bunker mark in sight, sound and meaning. The only distinctive word in both marks is "Bunker." Defendants' addition of the generic word "Club," used to identify a nightclub, does not distinguish the two marks. In interviews with news media, Defendants have discarded this extraneous word and referred to their venue simply as "The Bunker." The high degree of similarity between the marks increases the likelihood of confusion in the marketplace;

c) The two marks compete in the same geographic market. The Bunker events are hosted at venues across Manhattan and in areas of Brooklyn proximate to Manhattan. The Bunker Club is located in the Meatpacking District of Manhattan. The venue at which The Bunker hosts most of its events is in the Williamsburg neighborhood of Brooklyn, several miles away from The Bunker Club;

d) The two marks are used to identify services that serve the same purpose and fall within the same general class. The Bunker is used to identify a series of dance music events, while The Bunker Club is used to identify a venue that regularly hosts and sponsors dance music events. The competitive proximity of the two marks enhances the likelihood of confusion between them;

e)  Beyond has already encountered significant actual confusion among prospective purchasers and journalists regarding the affiliation of The Bunker and The Bunker Club. Beyond has received several inquiries from event planners looking to host music events and parties at The Bunker Club. Beyond has also received inquiries from reporters looking to write about The Bunker Club;

f)  Upon information and belief, these inquiries are merely the tip of a larger iceberg, and the true extent of the ongoing confusion exceeds what Beyond has witnessed. Upon information and belief, Beyond's clientele have inadvertently attended The Bunker Club on the mistaken belief that it was The Bunker; and

g)  Even sophisticated consumers and journalists have expressed confusion regarding the affiliation of The Bunker and The Bunker Club. The Bunker events also have a large international following and are regularly attended by visitors from abroad who may not be familiar with the city.

14) Defendants' infringement of The Bunker mark threatens to irreparably harm Plaintiff by damaging Plaintiff's good will and depriving Plaintiff of control over its reputation in the eyes of the public.

15) Defendants' infringing mark dilutes the inherent distinctiveness of Plaintiff's mark owing to the pronounced similarities between the two marks, and tarnishes Plaintiff's mark owing to the inferior quality of Defendants' services.

16) Defendants have willfully refused to abate their infringement of Plaintiff's mark, after being put on notice of their infringing use. Plaintiff first contacted representatives of The Vault on or around October 6, 2010 to advise Defendant of the potential confusion caused by

The Vault's use of The Bunker Club mark. Plaintiff received no reply to this or any of several subsequent communications until November 24, 2010.

17) Plaintiff met in person with Joel Veach, Operations Manager for The Vault on December 1, 2010. At this meeting, Mr. Veach stated that he had also encountered individuals who were confused as to the affiliation between The Bunker and The Bunker Club. However Mr. Veach represented that it would be "completely impossible" for The Vault to discontinue its use of The Bunker Club mark, and that The Vault had financial backing from a "huge corporation," whose identity Mr. Veach was not at liberty to disclose.

18) On December 16, 2010, Plaintiff was contacted by Donna Rodriguez, Director of Public Relations and Marketing for B.R. Guest. Ms. Rodriguez indicated that it would be out of the question for B.R. Guest to discontinue its use of The Bunker Club mark, and the parties concluded the call at an impasse.

19) Despite early intervention by Plaintiff to advise Defendants of their infringing use, and an abundance of publicly available information documenting Plaintiff's continuous use of The Bunker mark in Defendants' geographic and vertical markets, Defendants have persisted in adopting and using their infringing mark.

20) Defendants willfully, intentionally and deliberately continue to use their infringing mark, and continue to advertise, publicize and expand The Bunker Club, after being advised by Plaintiff of their infringement.

## FIRST CLAIM
(Against All Defendants)
(Unfair Competition and Trademark Infringement
Pursuant to Federal Lanham Act, 15 U.S.C. §§ 1117, 1125(a))

21) Plaintiff repeats and realleges paragraphs 1 through 20 above as if fully set forth herein.

22) Plaintiff is the owner and registrant of a distinctive service mark, The Bunker, which Plaintiff has used in interstate commerce.

23) In connection with services that they provide, Defendants have used words, terms, names and symbols in commerce that are likely to cause confusion as to Defendant's affiliation, connection or association with Plaintiff, and as to the origin, sponsorship and approval of Defendant's services by Plaintiff.

24) Plaintiff's has established priority in The Bunker mark by using that mark in commerce previous to Defendant's use of its junior mark in commerce.

25) Plaintiff will be irreparably harmed if Defendant is permitted to continue use of its infringing mark.

26) By reason of the foregoing, Plaintiff has been damaged in a sum which cannot be presently determined, but is estimated to be no less than $100,000.00, plus appropriate interest.

27) By virtue of their use of the infringing mark, Defendant has been unjustly enriched in a sum which cannot be presently determined, but is estimated to be no less than $250,000.00, plus appropriate interest.

## SECOND CLAIM
(Against All Defendants)
(Trademark Infringement Pursuant to
New York General Business Law §§ 360-k, 360-m)

28) Plaintiff repeats and realleges paragraphs 1 through 27 above as if fully set forth herein.

29) Plaintiff is the owner and registrant of State of New York Service Mark Registration No. S21655.

30) Defendant has used, without Plaintiff's consent, a copy or colorable imitation of Plaintiff's Service Mark No. S21655 in connection with the offering for sale and advertising of Defendant's services.

31) Defendant's unauthorized use of Plaintiff's Service Mark No. S21655 is likely to cause confusion or mistake or to deceive as to the source or origin of Defendant's services.

32) Plaintiff will be irreparably harmed if Defendant is permitted to continue use of its infringing mark.

33) By reason of the foregoing, Plaintiff has been damaged in a sum which cannot be presently determined, but is estimated to be no less than $100,000.00, plus appropriate interest.

34) By virtue of their use of the infringing mark, Defendant has been unjustly enriched in a sum which cannot be presently determined, but is estimated to be no less than $250,000.00, plus appropriate interest.

## THIRD CLAIM
(Against All Defendants)
(Trademark Dilution Pursuant to
New York General Business Law §§ 360-l)

35) Plaintiff repeats and realleges paragraphs 1 through 34 above as if fully set forth herein.

36) Defendant's unauthorized use of Plaintiff's mark to identify Defendant's inferior services is likely to cause dilution, tarnishment and blurring of the inherently distinctive quality of The Bunker mark.

37) Plaintiff will be irreparably harmed if Defendant is permitted to dilute the distinctive quality of The Bunker mark, as Defendant's hostile use could deprive Plaintiff of the right to protect that mark against further infringement or dilution.

FOURTH CLAIM
(Against All Defendants)
(Unfair competition under New York common law)

38) Plaintiff repeats and realleges paragraphs 1 through 37 above as if fully set forth herein.

39) Defendants knew, or should have known, of the existence of Plaintiff's mark at the time Defendant commenced use of its infringing mark in commerce, giving rise to an inference that Defendant's adoption of the mark was undertaken in bad faith.

40) Defendants ignored early communications from Plaintiff advising Defendants that their mark infringed The Bunker mark.

41) Defendants have refused to abate their use of the infringing mark, in spite of their admission that the infringing mark has caused confusion as to Plaintiff's affiliation with Defendants.

42) Defendants continue to advertise, publicize and expand The Bunker Club, after receiving notice from Plaintiff of their infringement.

43) Defendants have acted in bad faith in adopting and persisting in their use of their infringing mark and in appropriating Plaintiff's good will.

44) By reason of the foregoing, Plaintiff has been damaged in a sum which cannot be presently determined, but is estimated to be no less than $100,000.00, plus appropriate interest.

45) By reason of the foregoing, Defendant has been unjustly enriched in a sum which cannot be presently determined, but is estimated to be no less than $250,000.00, plus appropriate interest.

WHEREFORE Plaintiff Beyond Booking, Inc. respectfully requests that judgment be entered jointly and severally against Defendants The Vault, LLC and B.R. Guest Holdings, LLC

    A.    On all causes of action, permanently and forever enjoining Defendants from further use of The Bunker Club mark, or further infringement of Plaintiff's The Bunker mark;

    B.    On the first, second and fourth causes of action, for $100,000.00, plus appropriate interest, for damages suffered by Plaintiff by reason of Defendants' infringement of Plaintiff's mark;

    C.    On the first and second causes of action, for disgorgement of Defendants' profits derived from use of the infringing mark, believed to be no less than $250,000.00, plus appropriate interest;

    D.    On the first and second causes of action, for treble damages, equal to $1,050,000.00, plus appropriate interest;

    E.    For the costs and disbursements of this action, including reasonable attorneys' fees; and

    F.    For such other, further and different relief as the Court deems just and proper.

//

//

Dated: New York, New York
       March 30, 2011

                                              Respectfully submitted,

                                              GARVEY SCHUBERT BARER

                                        By: _____
                                                Malcolm Seymour, Esq.
                                                *Attorneys for Plaintiff*
                                                100 Wall Street, 20th Floor
                                                New York, New York 10005
                                                (212) 965-4533